UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BENJAMIN WILLIAMS, | ) |
| Plaintiff, | ) |
| v. | ) No. 19 C 4050 |
| | ) Judge Sara L. Ellis |
| SHERIFF THOMAS DART, et al., | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Plaintiff Benjamin Williams, a former detainee housed at the Cook County Jail ("CCJ"), filed this lawsuit against Defendants Sheriff Thomas Dart, John Mueller, Michael Tylor, Melissa Mitchell, Shekena Miller, and Gary Lewanski, alleging that his conditions of confinement at CCJ violated his rights under the Fourteenth Amendment's Due Process Clause. The Court screened Williams' second amended complaint and allowed him to proceed with his complaints about unsanitary bedding against all Defendants and his claim of cockroach infestation against Dart and Mueller. Doc. 61 at 3. Defendants have now moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Because disputed issues of fact exist as to the severity of the conditions of which Williams complains, the Court denies Defendants' motion.

# BACKGROUND[1]

At all relevant times, Williams was a pretrial detainee at CCJ, under the purview of the Cook County Department of Corrections ("CCDOC"). Williams entered CCJ on March 26, 2018. Dart, the Sheriff of Cook County, oversees CCJ. Mueller served as the Director of Inmate Services at CCJ. Lewanski, Miller, Mitchell, and Tylor all worked as correctional rehabilitation workers at CCJ.

## I. Unsanitary Bedding

Williams testified that, while at CCJ, instead of a mattress, he slept on a small thin cotton insert. Williams described the cotton as wet and smelling of urine. He testified that he had no way to dry the cotton. He acknowledged covering the cotton insert with sheets and blankets, receiving new linen to place over the cotton insert every week.

From March 7, 2019 to November 9, 2020, Williams sought a replacement mattress. On March 24, 2019, he made verbal requests to Tylor for a new mattress. On April 29, 2019, he filed a grievance indicating that he had no mattress and instead slept on cotton that smelled of urine. On May 17, 2019, Williams received a response to his grievance, which stated that CCDOC had ordered mattresses and would distribute them when received. He received a new mattress in November 2020, twenty months after his initial request.

---

[1] The Court derives the facts set forth in this section from the statements of fact submitted by the parties to the extent they comport with Local Rule 56.1, as well as the exhibits the parties have attached to the briefing. The Court takes the facts in the light most favorable to Williams, the non-movant.

The Court notes that its summary judgment procedures differ from those set forth in Local Rule 56.1, requiring both sides to work together and file a joint statement of facts. Here, while Defendants titled their statement of fact a "Joint Statement of Undisputed Material Facts," the document makes clear that it is only a joint statement on behalf of all Defendants. Doc. 119. While the Court overlooks this violation in the interest of resolving the motion on its merits, the Court expects the parties to comply with the Court's procedures going forward.

According to Williams, he experienced back pain due to not having a proper mattress and filled out health service request forms ("HSRFs") to have medical personnel address his back problems. A HSRF, dated September 21, 2019, described pain shooting up and down his back and knee. Nurse Muhammad saw him that day and recorded that Williams reported his pain arose from an altercation that occurred several days before. Nurse Muhammad observed no swelling, redness, bruising, or deformity, and she noted that Williams had been exercising when she arrived to see him. Williams asked for an x-ray of his back and refused Tylenol, indicating he needed something stronger. After Nurse Muhammad informed him that he exhibited no physical symptoms, Williams indicated he would grieve the issue. Williams testified that he did not have any continuing back problems at the time of his deposition.

## II.     Cockroaches

From January 1 to April 17, 2020, CCDOC housed Williams in Division 9. He then lived in Division 10 from April 17 to September 10, 2020. Williams returned to Division 9 on September 10, 2020, staying there through November 18, 2021. At the time of his deposition on August 22, 2023, CCDOC housed Williams in Division 6.

On February 4, 2020, while living in Division 9, Williams filed a grievance complaining that a cockroach bit him and expressing concern that cockroaches could cause sickness. On February 7, 2020, pest control found no evidence of cockroach activity in Williams' cell but treated it for cockroaches anyways. On February 10, 2020, Williams filed a HSRF, stating "I am itching. I am itching." Doc. 119-7. On February 12, 2020, Nurse Muhammad saw Williams, noting that Williams told her that a cockroach bit him several days before but denied having any continuing medical issues. Williams acknowledged that he had no further physical issues regarding the cockroach bite.

3

After his move to Division 10, on April 26, 2020, Williams filed a grievance regarding a cockroach and baby cockroach in his cell. Pest control responded by spraying for cockroaches.

The CCDOC pest control first quarter report for 2020 recorded two cockroaches in Division 9 and thirteen German cockroaches in Division 10.[2] The 2020 second quarter report recorded six German cockroaches in Division 10 and no cockroaches in Division 9. The 2020 third quarter report again recorded no cockroaches in Division 9 but six American and ten German cockroaches in Division 10. The 2020 fourth quarter report recorded five American cockroaches in Division 9 and no cockroaches in Division 10.

At his August 22, 2023 deposition, Williams testified that he saw six cockroaches in his cell that morning and stated that the cockroaches lived in holes in the walls with mice. He described the cockroaches as "real big" and "real fat," about the "size of a date." Doc. 119-2 at 24. He also indicated that they flew. Finally, Williams noted that he had sent four cockroaches to the Court and also one to his attorney to preserve as evidence.[3]

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine

---

[2] The pest control reports do not make it clear whether the numbers listed are those that the pest control company encountered during its visits or those that detainees and CCDOC employees reported.

[3] The Court received an envelope of dead cockroaches in February 2021 and ordered their destruction on March 1, 2021. Doc. 53.

dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

## ANALYSIS

Because of Williams' status as a pretrial detainee at all relevant times, his conditions of confinement claims arise under the Fourteenth Amendment's Due Process Clause. *Hardeman v. Curran*, 933 F.3d 816, 821 (7th Cir. 2019). Jail officials violate a pretrial detainee's constitutional rights when they act unreasonably to objectively serious living conditions that deprive the detainee of basic human needs. *Smith v. Dart*, 803 F.3d 304, 309–10 (7th Cir. 2015); *see also Burton v. Downey*, 805 F.3d 776, 786 (7th Cir. 2015). To prevail on his conditions of confinement claims, Williams must demonstrate that (1) he faced "sufficiently serious" conditions that "denied [him] 'the minimal civilized measure of life's necessities,'" *Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017) (citations omitted); (2) Defendants "possess[ed] a purposeful, a knowing, or possibly a reckless state of mind;" and (3) Defendants' actions were

5

"objectively unreasonable," *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015).[4] Defendants focus only on the first element, contending that Williams did not face a sufficiently serious condition and, even if he did, qualified immunity protects them from liability.[5] The Court considers Williams' unsanitary bedding and pest infestation claims separately, as the parties do.

### A. Unsanitary Bedding

First, Williams claims that Defendants subjected him to unconstitutional conditions of confinement by providing him with unsanitary bedding and failing to provide him with an appropriate mattress for twenty months. Defendants argue that he cannot show that this amounts to a sufficiently serious condition.

Prisons must provide detainees with "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." *Hardeman*, 933 F.3d at 820 (citation omitted). To determine the objective seriousness of a complained of condition, the Court considers the nature, duration, and harm caused by the conditions. *Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012). Merely requiring an inmate to sleep on a thin or uncomfortable mattress, by itself, does not violate the Constitution. *See, e.g.*, *Isby*, 856 F.3d at 514, 521–22 (requiring an inmate to

---

[4] Although the Court considers Williams' claims under the Fourteenth Amendment, the Court finds instructive the analysis of the objective prong required for Eighth Amendment conditions of confinement claims. *See Davis v. Abdeljaber*, No. 16-cv-10764, 2021 WL 1172597, at *3 (N.D. Ill. Mar. 29, 2021) ("[P]re-*Kingsley* decisions are instructive since anything that would violate the more stringent Eighth Amendment standard would necessarily also violate the Fourteenth Amendment.").

[5] In their reply, Defendants also argue that the Court should enter summary judgment for Mueller because he only denied Williams' grievances. *See Curtis v. Schwartz*, 856 F. App'x 44, 48 (7th Cir. 2021) ("[O]nly persons who cause or participate in a constitutional violation are responsible under § 1983; administrators who review a grievance about a prior act of misconduct do not cause or contribute to the conduct forming the basis of the grievance."). But because Defendants only raise this argument in reply, the Court cannot consider this argument. *See Dexia Credit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived."); *Multi-Ad Servs., Inc. v. NLRB*, 255 F.3d 363, 370 (7th Cir. 2001) ("It is well-settled that parties may not raise new arguments or present new facts for the first time in reply.").

sleep on "a thin, vinyl-covered foam mattress laid over a concrete slab" did not violate the Eighth Amendment even though the sleeping arrangement caused the inmate to develop back problems); *Thomas v. Doe*, No. 16-2086, 2016 WL 3951035, at *1 (C.D. Ill. July 20, 2016) (sleeping on a "thin deflated-like" mattress may be uncomfortable, but it does not amount to an extreme deprivation of life's necessities). But "bedding that is foul-smelling or contaminated with bodily fluids may be sufficient" to give rise to a constitutional violation. *Lyons v. Vergara*, No. 14 CV 9564, 2016 WL 4493455, at *10 (N.D. Ill. Aug. 26, 2016). And "[a]n adverse condition of confinement, if endured over a significant time, can become [a constitutional] violation even if it would not be impermissible if it were only a short-term problem." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016).

Here, Defendants argue that Williams' claim fails because he suffered no injury as a result of the lack of a proper mattress and he received clean sheets to place over the cotton insert each week. While Nurse Muhammad's notes reflect that Williams admitted that the back injury of which he complained on September 21, 2019 stemmed from an altercation, not his bedding, Williams testified more generally that his back hurt due to the lack of a mattress throughout the relevant time period. Therefore, a question of fact exists as to the harm, if any, that the lack of a mattress caused Williams.[6] And even assuming that Williams had suffered no physical injury, that would not be dispositive. *See Thomas*, 697 F.3d at 614 ("[P]hysical injury is not the only type of injury actionable in a prisoner's civil rights suit.").

---

[6] Defendants improperly assert that Williams cannot rely solely on his own self-serving testimony to create a dispute of fact. But the Seventh Circuit's cases for over twenty years "teach that [s]elf-serving affidavits can indeed be a legitimate method of introducing facts on summary judgment." *McKinney v. Off. of Sheriff of Whitley Cnty.*, 866 F.3d 803, 814 (7th Cir. 2017) (citation omitted) (internal quotation marks omitted); *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) (finding the district court erred when it discredited plaintiff's testimony due to its "self-serving" nature because "testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving").

Defendants also point out that Williams received clean sheets to place over the cotton insert each week, undermining the alleged seriousness of the condition. But Williams testified that the sheets did not mask the urine smell, at least creating a question as to whether the sheets adequately addressed the problem. *See Lyons*, 2016 WL 4493455, at *10 (foul-smelling bedding could give rise to a constitutional violation). Finally, a reasonable jury could find that the length of the delay in providing Williams with a new mattress supports Williams' claim. True, courts have found that denials of mattresses or clean bedding for short periods of time do not rise to the level of an objectively serious condition. *See, e.g.*, *Stephens v. Cottey*, 145 F. App'x 179, 181 (7th Cir. 2005) ("Sleeping for three days on a bedframe without a mattress is not extreme[.]"); *Chandler v. Westphal*, No. 3:24-CV-491, 2024 WL 4332812, at *2 (N.D. Ind. Sept. 26, 2024) (collecting cases); *Holton v. Tharp*, No. 20-cv-1136, 2024 WL 688609, at *4 (S.D. Ill. Feb. 20, 2024) (sleeping on the floor for two separate periods of four months, while "unpleasant," "did not lead to intolerable conditions, deprive [detainee] of one of life's necessities, or expose him to a substantial risk of harm"). But a reasonable jury could find that the twenty-month delay in providing Williams with a proper mattress, particularly given the grievance response in May 2019 that CCDOC had ordered mattresses and would distribute them when received, turned what may have been permissible into an impermissible condition. *Gray*, 826 F.3d at 1005; *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (reasonable jury could have found that sleeping on a wet and moldy mattress for fifty-nine days amounted to a sufficiently serious condition).

Therefore, a question of fact exists as to whether Williams suffered a sufficiently serious deprivation with respect to his unsanitary bedding.

B. **Cockroaches**

Williams also contends that CCJ has a cockroach problem. The presence of rampant pests may be sufficiently serious to implicate the Fourteenth Amendment. *See Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008) (holding that "a prolonged pest infestation, specifically a significant infestation of cockroaches and mice, may be considered a deprivation" of constitutional magnitude). Factors to consider include "how extensive the infestation of a prisoner's cell is, what the infesting pests are, what odors or bites or risk of disease they create, what particular psychological sensitivities the prisoner was known to have . . . , and how long the infestation continues." *Thomas*, 697 F.3d at 614.

Defendants argue that Williams cannot show he suffered a serious constitutional violation because no evidence in his medical records shows that he suffered any permanent physical or psychological injury due to cockroaches over a three-month period in 2020. They further contend that the fact that CCDOC routinely conducts pest control inspections and treatments, with the quarterly pest control reports from 2020 showing only small numbers of cockroaches in the divisions in which Williams lived, precludes a finding for Williams on his conditions claim related to a cockroach infestation.

Initially, the Court notes that while Williams' medical records do not include evidence of significant physical injury due to cockroaches, a cockroach bit him on at least one occasion and he sought medical attention several days later for itchiness. And Williams need not show physical injury to prevail; the Seventh Circuit has also recognized psychological or future harm could suffice where a plaintiff does not seek to recover compensatory damages. *Byrd v. Hobart*, 761 F. App'x 621, 623 (7th Cir. 2019); *Thomas*, 697 F.3d at 614–15. "The potential psychological harm from living in a small cell infested with mice and cockroaches is pretty

9

obvious." *Thomas*, 697 F.3d at 615. Additionally, "heavy, protracted infestation of a prisoner's cell with such pests might be found to be a compensable hazard even if the plaintiff had been lucky and escaped disease and had had sufficient psychological fortitude (or ignorance) to avoid suffering mental distress." *Id.* at 615–16.

The Court also acknowledges Defendants' argument that Williams has marshalled relatively weak evidence concerning a cockroach infestation, relying mainly on his own testimony. But in that testimony, Williams described large and fat cockroaches that come out of the vents and walls and flew around his cell at all hours. He claimed to have seen six cockroaches in his cell the morning of his deposition. He also sent the Court and his lawyer several cockroaches to preserve as evidence. Against this testimony, Defendants point to the pest control reports to suggest that, in 2020, no major cockroach infestation occurred and that CCDOC routinely treated for cockroaches. But the Court cannot decide between these two competing versions of the facts. *See Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) ("At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence[.]"). While Williams has not presented the strongest evidence, a reasonable jury could find Williams' testimony persuasive and conclude that a sufficiently serious cockroach infestation existed at CCJ. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (pest infestation could be objectively serious where the plaintiff alleged that cockroaches "were 'everywhere,' 'crawling on his body' (along with mice) and 'constantly awaken[ing]' him, and 'causing the environment to be unsanitary" and the jail sprayed for pests only twice in sixteen months (alteration in original)); *cf. Sain*, 512 F.3d at 894 (while "unpleasant," the presence of cockroaches in a prisoner's cell over a six-year period of confinement, leading to two bites, when balanced against

10

the jail's pest control efforts, did not amount to "objectively serious enough" conditions to establish a constitutional violation); *Grissom v. Watson*, No. 21-CV-274, 2023 WL 2263636, at *8 (S.D. Ill. Feb. 28, 2023) ("While the spraying was not 100% successful in eliminating all the insects, the presence of some insects in any group living setting is not unheard of and, while not wonderful, certainly does not deprive one of life's necessities unless outrageously excessive."). Therefore, the Court cannot grant Defendants' summary judgment on this claim.

### C. Qualified Immunity

Defendants alternatively argue that even if the Court finds that the conditions rose to a sufficiently serious level to establish a constitutional violation, qualified immunity protects them from liability. Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted) (internal quotation marks omitted). "Although qualified immunity is an affirmative defense, [Williams] has the burden of defeating it once the defendants raise it. To do so, [Williams] must show (1) that the defendant violated a constitutional right, when construing the facts in the light most favorable to [Williams], and (2) that the right was clearly established at the time of the alleged violation, such that it would have been clear to a reasonable actor that [his] conduct was unlawful." *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017). "[T]he clearly established right must be defined with specificity." *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019).

Although Williams does not directly respond to this argument, the Court finds that, as addressed above, disputed issues of fact preclude Defendants from benefiting from qualified immunity at this stage. *See Flowers v. Renfro*, 46 F.4th 631, 636 (7th Cir. 2022) (upholding

11

denial of qualified immunity when material disputes of fact existed surrounding the violation of a clearly established right); *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) ("When the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial."). Taking Williams' version of events as true, Defendants should have known that the conditions of which he complains violated the Constitution. *See Hardeman*, 933 F.3d at 820 (prisons must provide detainees with "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities" (citation omitted)); *Sain*, 512 F.3d at 894 (holding that "a prolonged pest infestation, specifically a significant infestation of cockroaches and mice, may be considered a deprivation" of constitutional magnitude). Therefore, the Court cannot conclude at this stage that qualified immunity shields Defendants from liability, and Williams' conditions of confinement claims must proceed to trial.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion for summary judgment [118, 120].

Dated: February 3, 2025

SARA L. ELLIS
United States District Judge